**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EDITH FOLEY, *on behalf of herself and those similarly situated*,

        Plaintiffs,

v.

MEDICREDIT, INC.,

        Defendant.

Civil Action No. 21-19764 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendant Medicredit Inc.'s ("Medicredit") Motion to Dismiss the Amended Complaint. (ECF No. 15.) Plaintiff Edith Foley ("Foley") opposed (ECF No. 17), and Medicredit replied (ECF No. 18). The United States (the "Government") also filed a brief in support of the constitutionality of the FDCPA (ECF No. 26) to which Medicredit responded (ECF No. 29). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Medicredit's Motion as moot and remands this case to state court.

**I.**    **BACKGROUND**

    This putative class action arises out of Medicredit's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* (*See generally* Am. Compl., ECF No. 9.) The Amended Complaint alleges that sometime before May 4, 2021, Foley incurred a debt to St. Mary Medical Center ("St. Mary"). (*Id.* ¶ 18.) The Amended Complaint fails to specify when, but at some point, St. Mary referred the debt to Medicredit for collection purposes. (*Id.*

¶ 26.) According to Foley, to facilitate collection on the debt, Medicredit communicated Foley's information to a third-party vendor that then sent a letter (the "Collection Letter") to Foley. (*Id.* ¶¶ 27-28.) The Collection Letter stated:

****URGENT NOTICE****

> Our attempts to reach you by phone and mail have been unsuccessful. It is your responsibility to call us. Unless we hear from you within TEN days of the date of this letter, further collection activity may be required.

(*Id.* ¶ 36.) The Collection Letter also indicated that there would be a $20 service charge on all returned checks. (*Id.* ¶ 41.) That is not all. The Collection Letter also advised Foley to "See Reverse For Important Information." (*Id.* ¶ 44.) When Foley reviewed the back of the Collection Letter, she found as follows:



(*Id.* ¶¶ 44-46.)

At bottom, the Amended Complaint alleges FDCPA violations under § 1692c(b) and § 1692(e), alleging that Medicredit violated the statute by (1) making or causing improper third

2

party communications, (2) using false, deceptive or misleading representations or means in connection with the collection of a debt, (3) threatening to take any action that cannot legally be taken or that is not intended to be taken, (4) making a false representation of the character, amount or legal status of a debt, and (5) using unfair or unconscionable means to collect or attempt to collect a debt. (*Id.* ¶ 57.)

On November 5, 2021, Defendant removed the Complaint from New Jersey Superior Court. (ECF No. 1.) Foley filed the Amended Complaint on December 3, 2021. (ECF No. 9.) On December 17, 2021, Medicredit moved to dismiss the Amended Complaint. (ECF No. 15.)

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Since subject matter jurisdiction is a threshold requirement for consideration of the sufficiency of the underlying claims, the Court's analysis begins there." *Frame v. Lowe*, No. 09-2673, 2010 WL 503024, at *5 (D.N.J. Feb. 8, 2010).

Article III of the United States Constitution limits the judicial power of federal courts to "the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982). To determine whether there is an actual case and controversy before the Court and "to ensure that federal courts do not exceed their authority[,]" courts look to the doctrine of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 336 (2016). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* at 338.

Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* In the pleading stage, as is the

case here, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (citations omitted).

### III. DISCUSSION

At issue here is the threshold question of whether Foley has suffered an injury in fact. *Id.* To show injury in fact, Foley must show that she has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not just conjectural or hypothetical.'" *Id.* at 339 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The particularity element of injury in fact requires Foley to demonstrate that she is "affected in a personal and individual way." *Id.* at 340. The concrete element requires that the injury be "'real,' and not 'abstract.'" *Id.* "Concrete" is not the same as "tangible," however. *Id.* The Supreme Court counsels, however, that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. For that reason, Foley cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

The Supreme Court recently illustrated these requirements. In *TransUnion LLC v. Ramirez*, a putative class of plaintiffs sued TransUnion, a credit reporting agency, for violations of the Fair Credit Reporting Act ("FCRA"). 141 S. Ct. 2190, 2202 (2021). Before addressing the merits of the plaintiffs' claims, the Court considered whether the class had suffered an Article III injury. *Id.* at 2203. Concluding that the plaintiffs had suffered none, the Court explained that concreteness turns on whether the alleged injury has a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (quoting *Spokeo*, 578 U.S. at 341). Examples of concrete harms include more traditional physical and monetary injuries and intangible injuries like harm to reputation. *Id.* The Court further limited concrete injuries to something more than mere statutory violations. *See id.* at 2204-05 (reasoning that Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that

is not remotely harmful into something that is" (citation omitted)). In short, "an injury in law is not an injury in fact." *Id.* at 2205.

The upshot of *TransUnion* is that courts must engage in a two-part inquiry when assessing statutory injuries: first, whether that injury bears a close relationship to a traditionally recognized harm, and second, whether a plaintiff has pled more than a mere injury in law. Assessing the injuries here, the Court can glean two discreet injuries: (1) Medicredit's sharing of Foley's private information with third parties and (2) fraudulent representations in the Collection Letter. The Court considers each in turn.

To start, Foley's Amended Complaint alleges that Medicredit violated the FDCPA by transmitting her personal information to a third-party vendor. (Am. Compl. ¶ 63.) Analogizing to more traditionally recognized harms, the harm Foley alleges most closely resembles a cause of action for public disclosure of private facts. New Jersey courts define that tort as the "invasion of privacy by unreasonable publication of private facts [as occurring] when it is shown that the matters revealed were actually private, that dissemination of such facts would be offensive to a reasonable person, and that there is no legitimate interest of the public in being apprised of the facts publicized." *Romaine v. Kallinger*, 537 A.2d 284, 299 (N.J. 1988) (internal quotations omitted); *see also* Restatement (Second) of Torts § 652D. Neither the Third Circuit nor New Jersey courts have addressed whether dissemination of private information to third-party mail vendors violates this tort. Regardless, courts have addressed that publication is critical to establishing this traditional harm. *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3574881, at *4 (D.N.J. July 25, 2018) (dismissing public disclosure of private facts counterclaim because the court could not "conclude that there was any publication or dissemination").

Foley's privacy injury must therefore fail because the Amended Complaint does not allege publication. (*See generally* Am. Compl.) In New Jersey, publication means that information is

5

"communicat[ed] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . ." *Hamza v. United Cont'l Holdings, LLC*, No. 19-8971, 2021 WL 3206814, at *10 (D.N.J. July 29, 2021) (citing *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 622 (3d Cir. 1996)). Applying that standard, Foley's Amended Complaint does not allege that her private information was publicized to the general public. *See Sputz v. Alltran Fin., LP*, No. 21-4663, 2021 WL 5772033, at *4 (S.D.N.Y. Dec. 5, 2021) (denying FDCPA claim under mail vendor theory where plaintiff did "not allege that any human being ever saw his private information"). At best, it alleges that a small group of Medicredit employees or agents may have read the Collection Letter. (Compl. ¶¶ 27-29.) But dissemination to a small group of employees is far from communicating to a large enough group such that Foley's information became public knowledge. *Hamza*, 2021 WL 3206814, at *10.[1]

Reenforcing the Court's conclusion are the numerous district court cases that have weighed in and found generally pled "mail vendor" theories insufficient for Article III standing under the FDCPA. For example, in *Pagan v. Convergent Outsourcing, Inc.*, the plaintiffs also alleged that a debt collector violated the FDCPA by using a third-party letter vendor to mail collection letters. No. 21-12130, at *1 (D.N.J. Mar. 30, 2022), ECF No. 17. Ultimately, the court ruled that those facts were insufficient to show a concrete injury because plaintiffs did not allege that "anyone actually read their information (rather than merely processed it), or that there ha[d] *otherwise been publicity to any meaningful degree.*" *Id.* (emphasis added). Similarly, the court in *Barclift v. Keystone Credit Servs., LLC*, concluded that "[e]ven assuming that the employees of the mailing

---

[1] Notably, Foley heavily relies on *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, to argue for her mail vendor theory. 17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021). This decision, however, has since been vacated for rehearing and is of questionable value here.

6

vendor read [the plaintiff's] personal information, sharing her personal information with 'a small group of persons is not publicity.'" No. 21-4335, 2022 WL 444267, at *9 (E.D. Pa. Feb 14, 2022); *see also TransUnion*, 141 S. Ct. at 2210 n.6 (noting in dicta that sending information to print vendors was not considered publication). Notably, that court also collected several cases that "determined that the mail vendor theory does not establish a concrete injury." *Barclift*, 2022 WL 444267, at *8 (listing cases).

Regarding the Amended Complaint's alleged injury of misrepresentations under Section 1692(e), the Court again looks to *TransUnion* for guidance to determine whether the harm alleged is "concrete" enough to confer Article III standing. *See Rohl v. Prof. Fin. Co., Inc.*, No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022). Foley complains that Medicredit used false, deceptive or misleading representations to collect by sending the Collection Letter that represented (1) Foley had a responsibility to call Medicredit, (2) Foley would be charged $20 for returned checks, and (3) Foley was required to provide updated personal information. (Am. Compl. ¶¶ 36-56.)

On the Court's review, Foley's Section 1692(e) allegations also do not demonstrate an injury that bears a close relationship to a traditionally recognized harm. At best, Foley alleges an informational harm in that she was misled by the letter. (*Id.* ¶ 83 (claiming Medicredit or its third-party vendors sent Foley and others letters, "which could have affected their decision-making with regard to the debt").) To be sure, misleading or confusing debt communications may cause harm sufficiently concrete for Article III standing. *See Huber v. Simon's Agency, Inc.*, No. 19-01424, 2022 WL 1801497, at *4 (E.D. Pa. June 2, 2022) ("Adequacy of informational harms for standing purposes [] turns on a plaintiff's consequential action or inaction following receipt of a misleading or deceptive collection letter. . ."). But "merely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related" to

traditional harms such as those necessary to plead a cause of action such as fraudulent or negligent misrepresentation. *Kola v. Forster & Garbus LLP*, No. 19-10496, 2021 WL 4135153, at *7 (S.D.N.Y. Sept. 10, 2021).

Applying that logic here, Foley does not allege that she was *actually* harmed in any manner from receiving the Collection Letter. At bottom, Foley alleges nothing more than an "informational harm" because Medicredit attempted to deceive her. *Faherty v. Rubin & Rothman, LLC*, No. 21-650, 2022 WL 1025958, at *4 (D. Conn. Apr. 6, 2022). Foley fails to allege that she was harmed by any action (or inaction) she took as a result of the Collection Letter. Allegations such as these are insufficient when they fail to allege an injury in fact, as opposed to simply an injury in law *i.e.* that a defendant simply violated a congressionally implemented statute. (*E.g.* Am. Compl. ¶ 85("[Foley] has suffered damages and other harm as a direct result of Defendants actions, conduct, omissions and violations of the FDCPA described herein").) Nor can the Court identify any other injury that would confer standing on Foley. The Court therefore finds that Foley does not allege an injury beyond statutory violations, which the Supreme Court has made clear is not enough to confer standing. *TransUnion LLC*, 141 S. Ct. at 2205 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . "). As such, the Foley lacks standing to bring this action.

To be sure, the Court does not view *Transunion* as foreclosing all recourse for harms stemming from FDCPA violations. Instead, plaintiffs must plead that they suffered some concrete injury as a result of the informational harm that the FDCPA regulates. As Courts in this District acknowledge, confusion, when coupled with action or inaction, may have a sufficiently close relationship with a "traditional harm" to confer standing. *Madlinger v. Enhanced Recovery Co.*, No. 21-00154, 2022 WL 2442430, at *5 (D.N.J. July 5, 2022); *Huber*, 2022 WL 1801497, at *4

(finding standing where plaintiff alleged "she did not pay her bill because she did not know which amount to pay" as a result of misleading information in the collection letter). The Court also does not doubt that "physical, monetary, or a traditional intangible harm like emotional distress" may be enough to concretely establish an injury. *Devitt v. Portfolio Recovery Assocs., LLC*, No. 21-5657, 2022 WL 1460278, at *4 (E.D.N.Y. May 9, 2022).

As Foley does not have Article III standing to bring this case, the Court remands this action to state court. 28 U.S.C. § 1447(c); *see also Katz v. Six Flags Great Adventure, LLC*, No. 18-116, 2018 WL 3831337, at *9 (D.N.J. Aug. 13, 2018) ("[C]ourts . . . have consistently found that, where a defendant removes a case from state court based on a federal question, but Article III standing is lacking, the proper recourse is to remand the case, rather than to dismiss the action."). The Court will therefore remand this action to state court.

### IV.    CONCLUSION

For the reasons set forth above, and for other good cause shown, the Court denies Medicredit's Motion as moot and remands this matter to state court. The Court will enter an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

9